STATE of Iowa, Appellee,

v.

Terrill Maurice BLANKS, Appellant.

No. 90–181.

Court of Appeals of Iowa.

Oct. 29, 1991.

As Corrected Feb. 27, 1992.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., William E. Davis, County Atty., and James L. Ottesen, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

While attending a party, Terrill Blanks became involved in a violent argument with Anne Fisher, a former girlfriend. This argument took place in an outdoor area a short distance from the party premises. Several neighbors saw the Blanks–Fisher altercation. They were concerned for Fisher's safety and tried to intervene. Thereupon Blanks allegedly beat one intervening neighbor quite severely and struck two others.

Several other men from the party eventually entered the fracas. Some of them attempted to keep the neighbors from intervening. Apparently all the young men from the party, including Blanks, were African–American. Anne Fisher was white.

As a result of these events, Blanks was charged with eight crimes. A jury found him guilty of four: one count each of willful injury, assault with intent to commit serious injury, assault resulting in bodily injury, and simple assault. Blanks has appealed from the resulting convictions.

Blanks first contends the district court erred by refusing to vacate the conviction for assault with intent to commit serious injury. This conviction referred to the same victim as the willful injury conviction. Because of this, Blanks argues the charge of assault with intent to commit serious injury was a lesser-included offense of the willful injury charge. The State agrees with this argument. It concedes the district court erred by refusing to vacate the conviction for assault with intent to commit serious injury.

Blanks next argues he was denied a fair trial due to prosecutorial misconduct during closing argument. This issue arose in the following manner. During the defendant's closing argument, defense counsel made reference to the movie "Fatal Attraction," in which a woman obsessively harasses a former lover. Defense counsel was apparently trying to suggest Anne Fisher had engaged in similar obsessive harassment of Blanks. In an alleged response to this reference, the prosecutor referred to the movie "Gorillas in the Mist," which deals with field research on gorilla behavior. The prosecutor later claimed he was trying to suggest only humans, unlike gorillas, must be subject to a rule of law. However, Blanks, who is black, contends the reference was a prejudicial attempt to equate himself and his black witnesses with gorillas.

Blanks also contends he was denied a fair trial due to judicial misconduct. He complains on several occasions the judge interrupted his attorney, expressed impatience with his attorney, or invited the prosecutor to object to questions posed by his attorney.

Blanks contends the district court erred by excluding part of his proposed evidence concerning Anne Fisher's prior assaults on himself and his current girlfriend. The district court allowed Blanks to present lay opinion evidence of Fisher's character and his own testimony about specific instances of conduct by Fisher. However, the court did not allow him to present testimony by certain other persons about specific instances of conduct.

Finally, Blanks contends his trial attorney rendered ineffective assistance of counsel in several respects. He complains his attorney failed to investigate adequately the facts surrounding the crimes and failed to pursue the possibility another person may have inflicted some of the blows for which he was accused. In addition, he complains the attorney did not adequately preserve his complaints regarding prosecutorial misconduct and judicial misconduct, noted above. Blanks asks his claims of ineffective assistance be preserved for a future postconviction relief action.

Our standard of review is for errors of law. Iowa R.App.P. 4. However, when a defendant is alleging error involving a constitutional right, we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State,* 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries,* 417 N.W.2d 237, 239 (Iowa App.1987).

### I. *Closing Argument.*

Because we find this issue determinative of the case, we proceed immediately to Blanks' argument the prosecutor made improper comments in his closing argument. It is not seriously disputed the prosecuting attorney cited to the movie "Gorillas in the Mist" in closing arguments. The movie was mentioned in reference to Blanks' alleged crime and the series of events surrounding the alleged criminal acts.

In a bill of exceptions, filed after a limited remand, the prosecuting attorney's comments were stated to be a bridge to another study, which showed gorillas to be engaged in wars and murders. The point the prosecutor was attempting to make was that the essential difference between humans and animals was the rule of law.

■ A. *Comparison with Animals.* We appreciate the prosecutor's point the rule of law is necessary for an orderly society. However, given the facts of this case, we determine the prosecutor's remarks can be interpreted by the jury as having racial overtones. Additionally, the comparison of a defendant to gorillas, apes, other animals or other demeaning descriptions by itself may constitute reversible error. *See, e.g., Volkmor v. United States,* 13 F.2d 594, 595 (6th Cir.1926) (new trial granted where prosecutor's closing argument referred to accused as a "skunk"; an "onion"; a "weak-faced weasel"; a "cheap, scaly, slimy crook"); *see generally,* Annotation, *Prosecutor's Appeal to Prejudice,* 70 A.L.R. 4th 664 (1989); Annotation, *Due Process–Prosecutor's Statement,* 40 L.Ed.2d 886 (1975).

The United States Supreme Court announced the role of prosecuting attorneys and their concomitant obligations in criminal prosecutions:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he in a peculiar and very definite sense is the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935). *See also United States v. [Karen] Doe,* 860 F.2d 488, 494 n. 4 (1st Cir.1988).

The American Bar Association has adopted the following guidelines for the

conduct of prosecuting attorneys in closing arguments:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

(e) It is the responsibility of the court to ensure that final argument to the jury is kept within the proper, accepted bounds.

ABA Standards for Criminal Justice, § 3–5.8 (2d ed. 1980).

In determining whether prosecutorial impropriety provides the basis of reversal, the following factors have been found to be relevant:

(1) Whether the prosecutor's remarks were made in response to defense counsel's argument to the jury;

(2) Whether the prosecutor's conduct was isolated and/or deliberate;

(3) Whether the trial court gave a curative instruction and, if so, whether this was strong and explicit enough to overcome any surviving prejudice that would affect the outcome of the trial.

*See United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983) (citing *United States v. Capone,* 683 F.2d 582, 586–87 (1st Cir. 1982)); Annot. *Due Process—Prosecutor's Statements,* 40 L.Ed.2d 886, 892 (1974).

In addition, our supreme court has established guidelines:

Within reasonable limits, the language of counsel in the argument is privileged, *and he is permitted to express his own ideas in his own way, so long as they may fairly be considered relevant to the case which has been made.... [H]e is not required to [forgo] all the embellishments of oratory, or to leave uncultivated the fertile field of fancy.* It is his time-honored privilege to—

Drown the stage in tears,

Made mad the guilty and appall the free, Confound the ignorant, and amaze, indeed, The very faculties of eyes and ears.

*Stored away in the proper room of the profession are moving pictures in infinite variety, from which every lawyer is expected to freely draw on all proper occasions. They give zest and point to the declamation, relieve the tediousness of the juror's duties, and please the audience, but are not often effective in securing unjust verdicts.* The sorrowing, "gray-haired parents," upon the one hand, and the broken-hearted "victim of man's duplicity," upon the other, have adorned the climax and peroration of legal oratory from a time "whence the memory of man runneth not to the contrary," and for us at this late day to brand their use as misconduct would expose us to just censure for interference with ancient landmarks.

*State v. Burns,* 119 Iowa 663, 671, 94 N.W. 238 (1903) (emphasis added). *See Dunlop v. United States,* 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799 (1897); 75 Am. Jur.2d *Trial* § 234, at 313 (1974) (perfectly permissible for counsel to indulge in illustrations and metaphorical allusions during closing argument).

**B. *Parallel Plot.*** There is a another problem with the reference to the movie "Gorillas in the Mist" aside from what might be characterized as racial overtones. In "Gorillas in the Mist," the young white woman stands alone against the black African hunters. In the end, they violently murder her.

In this case, likewise, there is a single white woman. She is allegedly attacked and beaten by a black man. In the end, the black men allegedly beat several others who attempted to come to her rescue. Given the parallels between the movie "Gorillas in the Mist" and the present case, we believe the use of the movie to illustrate the prosecutor's point was prejudicial. By his allusion, the prosecutor brought before the jurors a myriad of other factors not previously present. "Of course, counsel has no right to create evidence by his argument or interject his personal beliefs. It is for the jury to determine the logic and weight of the conclusion drawn." *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975) (citations omitted).

The impact of the movie, and the closeness of its plot to the alleged scenario of events, leads us to conclude the prosecutor's statement was improper and unfairly prejudicial. Although the trial judge denied the defendant's motion for a new trial, we note that he commented that the prosecutor's remarks were not totally appropriate.

■ C. *Racial Statement.* Finally, we turn to the racial issue itself. The use of racial arguments by a prosecutor to obtain a conviction is unconstitutional as a denial of due process. *See Miller v. North Carolina*, 583 F.2d 701 (4th Cir.1978). The United States Supreme Court has condemned the use of race by the prosecution. *See Baston v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Iowa Supreme Court has indicated when "defendant contends the prosecutor injected race in the case [during closing argument]," the supreme court "examine[s] the proceedings very closely to see whether the contention is true and whether defendant suffered prejudice." *State v. Hollins*, 253 N.W.2d 597, 599 (Iowa 1977).

■ We likewise have examined the record closely. Regardless of the prosecutor's good faith intentions and what he claims to be an innocent remark, there is the prejudicial possibility that from the jury's standpoint an attempt was made to compare the behavior of the defendant with that of apes and gorillas. The prosecutor's good faith concerning this comparison is not determinative. It is the effect his comments may have on the jury that concerns us. In this instance, we determine his remarks were prejudicial.

In reaching this decision, we are not being critical of either the prosecutor or the State. To the State's credit, in its brief to us it states: "Lest there be any doubt, the State certainly does not dispute that *all* direct *or* indirect comments, which portray *improperly* any accused's or witness's race during a trial, deserve just condemnation." (Emphasis in original.)

■ We accordingly reverse Blanks' conviction and remand for a new trial. In doing so, we are reminded that the judicial branch of the government of this state has for over 150 years led the nation in protecting the individual rights of our citizens. We reaffirm that position. We reassert that we deplore the injection into a trial of sex, race, color, or creed bias. Further, we condemn the use of bias in any form, whether it comes into a trial directly or indirectly through inferences.

## II. *Judge's Statements.*

Blanks contends that several times throughout the course of the trial, the trial judge interjected himself into the proceedings on behalf of the prosecution. He claims these interjections unfairly prejudiced the conduct of his trial.

Apparently Blanks' trial counsel did not object to several of these interjections. The State appears to concede on appeal that when employing the rule of hindsight some of the judge's comments should not have been made or worded in the way they were. The State strongly argues, however, that the defendant suffered no prejudice.

At this juncture, we note that Justice Uhlenhopp once observed: "[Trial judges are] an easy mark for anyone who wishes to claim prejudicial misconduct. .... They function in a glass house." *State v. Browning*, 269 N.W.2d 450, 454 (Iowa 1978). His remarks reflect those made long ago by Learned Hand:

[T]he disposition of courts to reverse judgments because of minor excesses in the exercise of a judge's authority at the trial has much abated; separate passages cut from their context and from the trial as a whole, often have an apparent importance which in fact they do not deserve. We do not of course mean that we may ever abdicate our essential duty of insuring an impartial conduct of the trial ... but nothing conduces less to it than an overzealous scrutiny of every word that may fall from the judge's mouth.

*United States v. Warren*, 120 F.2d 211, 212 (2nd Cir.1941); *see Goldstein v. United States*, 63 F.2d 609, 613 (8th Cir.1933) (incidents of judicial misconduct "are often regarded as trivial during trial of a case and are quickly lost sight of, but, when set forth in the record and emphasized by counsel on appeal, they take on an importance which they never actually possessed"); *see also Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78, 85–87 (1982) (bias cannot be imputed to juror); *State v. Johnson*, 445 N.W.2d 337, 340 (Iowa 1989).

It would add little to this opinion for us to set forth the challenged remarks. We note trial counsel was not that concerned for during the course of the trial objections were not lodged; nor did defense counsel urge these comments as grounds for a mistrial after the jury's verdict.

Be that as it may, we need not decide if those comments were of such prejudicial impact as to require a new trial. We have reversed and remanded on other grounds.

III. *Merger of Lesser–Included Offenses.*

■ Blanks contends the trial court improperly entered judgment on both willful injury and assault with intent to inflict serious injury. He contends, and the record reveals, assault with intent was a lesser-included offense of willful injury. As such, the trial court should have merged the verdicts. The State concedes

this point. *See, e.g., State v. Davis*, 328 N.W.2d 301, 307 (Iowa 1982). We accordingly reverse the trial court on this issue.[1]

IV. *Evidence of Victim's Earlier Violent Conduct.*

■ Blanks contends the trial court erred by refusing to allow evidence of Anne Fisher's earlier violent conduct against him. The State argues Blanks was not prejudiced by the trial court's refusal, as the court directed a verdict in favor of Blanks regarding her assault.

Our rules of evidence clearly allow such evidence, subject to the trial court's discretion. *See* Iowa R.Evid. 404(a)(2), 608, 609. Our supreme court has allowed evidence concerning individual incidents of the victim's violent character toward the accused which occurred *after* the incident for which the defendant is charged. *State v. Dunson*, 433 N.W.2d 676, 679–81 (Iowa 1988).

We are convinced that because of the peculiar circumstances of this case it is difficult to find how the defendant was prejudiced. It just cannot go unnoticed the substantial evidence in the record from other witnesses that reflect Fisher's specific instance of conduct toward the defendant. In addition, after the prosecutor rested, the trial judge granted defendant's acquittal motion on the charge he had assaulted Fisher. Thus, standing alone, we would not reverse and grant a new trial on this ground.

However, because this case is to be remanded for a new trial and in light of the fact there are others involved besides Fisher in this affair, to render a proper and fair verdict, the jury should hear how the incident started, including any pertinent background information.

With this in mind, on remand, the court is to allow this evidence if Blanks relies on similar defenses.

1. Charging with multiple counts of lesser-included offenses of the same occurrence may run afoul of the double jeopardy clause. *See id.; Corbin v. Grady*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *State v. Jeffries*, 430 N.W.2d 728, 738–39 (Iowa 1988); *State v. Newman*, 326 N.W.2d 796, 802–03 (Iowa 1982).

## V. *Other Issues.*

Blanks raises other issues, such as ineffective assistance of counsel. He asks us to preserve these for postconviction relief. Because of our disposition in this case, we find it unnecessary to consider this issue or other issues.

We reverse and remand for a new trial not inconsistent with this opinion.

REVERSED AND REMANDED.