# IN THE COURT OF APPEALS OF IOWA

No. 15-1732
Filed March 22, 2017

**IN RE THE DETENTION OF**
**DAVID L. TAFT JR.**

**DAVID L. TAFT JR.**
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Lars G. Anderson, Judge.

Respondent, who was civilly committed as a sexually violent predator, appeals a jury's verdict finding he was not suitable for discharge or placement in a transitional release program. **AFFIRMED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Linda J. Hines, Assistant Attorneys General, for appellee.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

David Taft Jr., who was civilly committed as a sexually violent predator, appeals a jury's verdict finding he was not suitable for discharge or placement in a transitional release program. We find the jury was properly instructed on the State's burden of proof, the preconditions for placement in the transitional release program, and the necessity of an approved release prevention plan. We affirm the decision of the district court.

## I.        Background Facts & Proceedings

In 1987, Taft was charged with lascivious acts with a minor and other sexual offenses. He was convicted of the offenses and sentenced to prison. Taft was discharged in May 1991. A few days after his release, he entered a home where two girls, ages nine and ten, were home alone and sexually assaulted one of the girls and attempted to assault the other. *See State v. Taft* (*Taft I*), 506 N.W.2d 757, 759 (Iowa 1993). Taft was convicted of sexual abuse in the second degree, burglary in the first degree, and assault causing bodily injury. *Id.* at 763.

When Taft was discharged from prison in 2005, the State filed a petition alleging he should be committed as a sexually violent predator under Iowa Code chapter 299A (2005). A jury found he suffered from a mental abnormality, which made it more likely than not he would reoffend, and he was committed to the civil commitment unit for sexual offenders. *See Taft v. Iowa Dist. Ct.* (*Taft II*), 828 N.W.2d 309, 311 (Iowa 2013). In this program, there is an annual review to determine whether the committed person should be discharged or placed in a transitional release program. *Id.* at 313. There is a rebuttable presumption in favor of extending civil commitment. *Id.* (citing Iowa Code § 229A.8(1)). A

committed person is entitled to a final hearing if, based on a consideration of all the evidence, the court finds the person has shown by a preponderance of the relevant and reliable evidence a hearing should be held to determine whether the person's mental abnormality has changed so the person is not likely to reoffend. *Id.* at 318.

After Taft's 2013 annual review, the district court denied his request for a final hearing. Taft petitioned for certiorari, claiming sections 229A.8A(2)(d) and (e) were unconstitutional. *See Taft v. Iowa Dist. Ct.* (*Taft III*), 879 N.W.2d 634, 638 (Iowa 2016). Our supreme court determined the issue was not ripe for adjudication, noting Taft had been denied a final hearing for reasons other than those presented in sections 229A.8A(2)(d) and (e). *Id.* at 639 ("Even assuming *arguendo* we determined the challenged criteria violate Taft's substantive due process liberty rights, such a determination would not have any effect on the district court's determination at the annual review.").

While *Taft III*, was pending, on February 25, 2015, the district court granted Taft's request for a final hearing, pursuant to section 229A.8(6), after his 2014 annual review.[1] The final hearing was held in September 2015. The State's expert, Dr. Stacey Hoem, a psychologist, testified she believed Taft was more likely than not to reoffend. She also testified Taft did not qualify for transitional release under section 229A.8A because he did not have an adequate relapse prevention plan and he recently had three disciplinary reports. Taft

---

[1] Before the final hearing on the 2014 annual review was held, the 2015 annual review was filed. Taft requested the 2015 annual review be subject to separate proceedings to determine whether he was entitled to a final hearing based on the 2015 annual review. The district court noted evidence of Taft's current circumstances was relevant, but the hearing did not specifically address the 2015 annual review.

presented the testimony of Dr. Craig Rypma, a psychologist who stated Taft was not likely to reoffend and his relapse prevention plan was adequate. The jury returned a verdict finding Taft's mental abnormality had not changed so he was not suitable for discharge and he was not suitable for placement in the transitional release program. Taft now appeals.

## II. Standard of Review

Our review in this detention matter is for the correction of errors at law. *See In re Det. of Shaffer*, 769 N.W.2d 169, 172 (Iowa 2009). To the extent constitutional issues are raised, however, our review is de novo in light of the totality of the circumstances. *See In re Det. of Matlock*, 860 N.W.2d 898, 901 (Iowa 2015).

## III. Jury Instructions

**A.** Taft claims the instructions impermissibly allowed the State to prove Taft was dangerous by a preponderance of the evidence. The jury was given the following instructions:

> No. 10 In order to prove that the Respondent is not suitable for discharge, the State must prove that the Respondent's mental abnormality remains such that he is likely to engage in predatory acts that constitute sexually violent offenses if he is discharged.
> . . . .
> No. 13 As used in these Instructions, the term "likely to engage in predatory acts constituting sexually violent offenses" means that the person more likely than not will engage in acts constituting sexually violent offenses. The word "likely" means that a proposition is more probably true than not.
> You are instructed that at the time of Respondent's commitment in 2005, it was determined that he was likely to engage in predatory acts constituting sexually violent offenses if not confined in a secure facility.

The instructions also stated, "Whenever I instruct you that the State must prove a proposition, it must do so by evidence beyond a reasonable doubt."

Taft claims the phrase "more likely than not," is a preponderance of the evidence standard. He points out the United States Supreme Court stated in *Addington v. Texas*, 441 U.S. 418, 427 (1979), a state must justify confinement in civil commitment proceedings "by proof more substantial than a mere preponderance of the evidence." Taft claims the district court should have given the jury his proposed instruction on the State's burden of proof.

Under section 229A.8(6)(d)(1), in a final hearing the State has the burden to prove beyond a reasonable doubt, "The committed person's mental abnormality remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged." The phrase "[l]ikely to engage in predatory acts of sexual violence," "means that the person more likely than not will engage in acts of a sexually violent nature." Iowa Code § 229A.2(5).

A similar issue was addressed by the Iowa Supreme Court in *In re Detention of Williams*, 628 N.W.2d 447, 458 (Iowa 2001), where the court considered whether the State's burden of proof to show a person "more likely than not" would engage in acts of a sexually violent nature, improperly reduced the State's burden, contrary to due process. Our court agreed with a Washington case, which "reasoned that because Washington requires the highest standard of proof [beyond a reasonable doubt], 'the term "likely" can be given its ordinary meaning without the risk of falling below the constitutionally required minimum of clear and convincing evidence.'" *Williams*, 628 N.W.2d at 458 (quoting *In re Det. of Brooks*, 973 P.2d 486, 491 (Wash. 1999)). The supreme court noted Iowa,

like Washington, requires proof beyond a reasonable doubt. *Id.* at 458-59. The court stated:

> We thus conclude that defining the statutory term "likely" as "more likely than not" or "more probable than not" will not diminish the required high level of proof. The instruction given by the district court not only comports with the statutory definition, due process requires nothing more. Williams's argument to the contrary is without merit.

*Id.* at 459.

We conclude Taft has not shown the jury was improperly instructed on the State's burden of proof.

**B.** Taft claims the instruction setting forth the preconditions for placement in the transitional release program was confusing, contradictory, and unconstitutional.

Instruction No. 8 provided:

> To prove that Respondent is not suitable for transfer to a transitional release program, the State must prove that the Respondent's mental abnormality has not improved to the point that he is appropriate for transfer to a transitional release program. The Respondent is appropriate for transfer to a transitional release program only if he satisfies all of the following criteria:
> (1) The Respondent's mental abnormality is no longer such that the person is a high risk to reoffend.
> (2) The Respondent has achieved and demonstrated significant insights into his sex offending cycle.
> (3) The Respondent has accepted responsibility for his past behavior and understands the impact sexually violent crimes have upon victims.
> (4) A detailed relapse prevention plan has been developed and accepted by the treatment provider which is appropriate for the Respondent's mental abnormality and sex offending history.
> (5) No major discipline reports have been issued for the Respondent for a period of six months.
> (6) The Respondent is not likely to escape or attempt to escape custody if placed in a transitional release program.

(7) The Respondent is not likely to engage in predatory acts constituting sexually violent offenses while in the program.

(8) The placement is in the Respondent's best interest.

(9) The Respondent has demonstrated a willingness to agree to and abide by all rules of the program.

(10) The Respondent has agreed to register as a sex offender.

If you find from the evidence that the State has proved that the Respondent does not satisfy any one or more of these criteria, then the Respondent is not suitable for transfer in a transitional release program.

If, however, the State has failed to prove that the Respondent does not meet any one or more of these criteria, then the Respondent is suitable for transfer to a transitional release program.

**1.** Taft objected to the language in paragraph 1, providing he was eligible for the transitional release program only if "his mental abnormality is no longer such that the person is a high risk to reoffend." He states the term "high risk" is not defined and was confusing. "We review jury instructions to determine if they are correct statements of the law and are supported by substantial evidence." *State v. Scalise*, 660 N.W.2d 58, 64 (Iowa 2003). "In our review, we read all of the instructions together, not piecemeal or in artificial isolation." *Id.*

Paragraph 1 follows the language of section 229A.8A(2)(a) and, therefore, is a correct statement of the law. Looking at the jury instructions as a whole, we determine the use of the term "high risk" is not confusing, particularly when considered in conjunction with instruction No. 11, which defines the term "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity and predisposing the person to commit a sexually violent offenses to a degree that causes the person serious difficulty in controlling his behavior." Looking at the instructions as a whole, we conclude the court did not err in giving this instruction.

**2.** Taft objected to paragraph 4, claiming he had submitted a relapse prevention plan, which had been approved by his therapist, Bill Reese. *See* Iowa Code § 229A.8A(2)(d). At the time Taft was requesting a final hearing, the State agreed "the approval of the plan moots the claim that [Taft] is currently disqualified based on the portion of the transitional release criteria set forth in [section] 229A.8A(2)(d)." During the final hearing, the State presented evidence to show Reese had not properly approved the relapse prevention plan. Taft claims the issue of whether he had an adequate relapse prevention plan should not have been submitted to the jury based on the State's earlier agreement he had an approved relapse prevention plan.

At the final hearing, the State argued its earlier agreement was only for the purposes of determining whether Taft was entitled to a final hearing. At an annual review hearing, "[t]he burden is on the committed person to prove by a preponderance of the evidence that there is relevant and reliable evidence to rebut the presumption of continued commitment, which would lead a reasonable person to believe a final hearing should be held to determine," if the person should be discharged or placed in a transitional release program. Iowa Code § 229A.8(5)(e)(1). "This standard for determining whether a final hearing is required is satisfied if a reasonable person would find, from the relevant and reliable evidence presented at the annual review stage, that the committed person has more likely than not generated a fact question on either of the issues enumerated in section 229A.8(5)(e)(1)(a) or (b)." *Taft II*, 828 N.W.2d at 318.

On the other hand, at the final hearing the State has the burden to prove beyond a reasonable doubt (1) "[t]he committed person's mental abnormality

remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged" or (2) "[t]he committed person is not suitable for placement in a transitional release program pursuant to section 229A.8A." Iowa Code § 229A.8(6)(d).

Thus, at the earlier proceeding Taft had the burden to show by a preponderance of the evidence a final hearing should be held. At the final hearing, however, the State had the burden to show beyond a reasonable doubt Taft should continue to be committed. We conclude the district court did not err in finding the State's agreement Taft met the requirement in section 229A.8A(2)(d), for purposes of determining whether he was entitled to a final hearing, did not mean the State agreed it had shown beyond a reasonable doubt Taft had not fulfilled the requirement to show he had developed an approved relapse prevention plan.

**3.** Paragraph 5 provides, "No major discipline reports have been issued for the Respondent for a period of six months." This provision follows section 229A.8A(2)(e). Taft claimed the issue should not be submitted to the jury because he did not have a major discipline report for a period of six months.

We determine there are two separate six-month periods. As discussed above, the process to obtain a final hearing is separate from the actual final hearing—there is a bifurcated process. For the first part, Taft did not have a major discipline report for the six-month period before the district court ruled he was entitled to a final hearing. Some period of time went by before the final hearing was held. In order to meet the second part, pursuant to section 229A.8A(2)(e), Taft would need to show he did not have a major discipline report

in the six-month period before the final hearing. Taft testified he had six major discipline reports in 2015, three of them arising between May and the final hearing in September. We conclude the district court did not err in submitting this issue to the jury.

**4.** During the discussions concerning Instruction No. 8, counsel for Taft mentioned arguments concerning the constitutionality of section 229A.8A(2)(d) and (e) were pending before the Iowa Supreme Court in *Taft III*, 879 N.W.2d at 638-39. Taft raised the same arguments in the present proceedings. The district court overruled the objections to Instruction No. 8 but did not specifically address Taft's constitutional issues. We conclude Taft has not preserved error on his constitutional arguments concerning paragraphs 4 and 5 of Instruction No. 8 because the district court did not rule on the issue. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) ("Generally, we will only review an issue raised on appeal if it was first presented to and ruled on by the district court.").

### IV. Evidentiary Ruling

Taft claims the district court abused its discretion by permitting the State to present evidence to show he did not have an adequate relapse prevention plan. He again points out the State agreed he had an approved relapse prevention plan at the time Taft was requesting a final hearing. Taft claims the district court should have ruled the State was precluded from presenting evidence to show his relapse prevention plan was inadequate. We review a court's evidentiary rulings for an abuse of discretion. *In re Det. of Blaise*, 830 N.W.2d 310, 315 (Iowa 2013).

For the reasons discussed above concerning the applicability of the State's agreement to the final hearing, we determine the district court did not abuse its discretion in permitting the State to present evidence during the final hearing to show Taft did not have an adequate relapse prevention plan, as required by section 229A.8A(2)(d).

We affirm the decision of the district court.

**AFFIRMED.**